**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RSS JUDGMENT ENFORCEMENT LLC,<br><br>    *Plaintiff*,<br><br>    v.<br><br>SYMBION POWER TANZANIA<br>LIMITED, SYMBION POWER, LLC,<br>PAUL HINKS, RICHARD WESTBURY<br>a/k/a RICHARD BETHELL,<br>R.W. CHELSEA HOLDINGS LTD,<br>SYMBION POWER HOLDINGS, LLC,<br>SYMBION POWER SERVICES U.S., INC,<br>SYMBION POWER AFRICA, LLC,<br>SYMBION ENERGY HOLDINGS LTD,<br><br>    *Defendants*. | Case No. 1:21-CV-04331-LAK<br><br>Hon. Lewis A. Kaplan |

**DEFENDANTS SYMBION POWER, LLC, SYMBION POWER HOLDINGS, LLC,
SYMBION POWER SERVICES U.S., INC., AND SYMBION POWER AFRICA, LLC'S
MEMORANDUM OF LAW IN SUPPORT MOTION TO DISMISS**

Brett D. Goodman
TROUTMAN PEPPER HAMILTON SANDERS LLP
875 third Avenue
New York, New York 10022
(212) 704-6000

*Attorney for Defendants Symbion Power Africa, LLC, Symbion Power Holdings, LLC, Symbion
Power Services U.S., Inc., and Symbion Power, LLC*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ............................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ................................................... 3

    A.    The U.S. Defendants ................................................................................... 3

    B.    The Arbitration and the Award ................................................................. 4

    C.    Procedural History ..................................................................................... 5

III.  THE CLAIMS AGAINST THE U.S. DEFENDANTS SHOULD BE
DISMISSED UNDER RULE 12(b)(1) ............................................................................ 7

    A.    Plaintiff Lacks Standing to Bring Its Claims Against the U.S. Defendants .......... 7

        1.    Plaintiff has neither pleaded facts nor produced an assignment
showing that it is has standing to pursue the claims of RSS, a third
party ................................................................................................................... 8

        2.    Even accepting Plaintiff's conclusory assertion that it was assigned
rights in the Arbitration Award, Plaintiff still lacks standing to
pursue its state-law tort and equitable claims ........................................... 10

    B.    The Court Lacks Supplemental Jurisdiction Over Plaintiff's State-law
Claims ........................................................................................................... 12

IV.   THE CLAIMS AGAINST THE U.S. DEFENDANTS SHOULD BE
DISMISSED UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM ............ 16

    A.    Plaintiff's FAA Claim (Count III) Is Procedurally Defective and Fails on
the Merits ..................................................................................................... 16

        1.    Plaintiff cannot confirm the Arbitration Award against the U.S.
Defendants who were neither parties to the Arbitration
Agreements, nor participants in the underlying arbitration .................... 16

        2.    Plaintiff has failed to produce the "authenticated original award or
a duly certified copy" of the Award, and has failed to produce the
underlying Arbitration Agreements, as required by the New York
Convention ..................................................................................................... 20

    B.    Plaintiff's State-law Claims Against the U.S. Defendants Also Fail .................. 21

        1.    Plaintiff has not pleaded the elements of actual and constructive
fraud (Counts IV and V) ............................................................................. 21

        2.    Plaintiff has not stated a claim for unjust enrichment (Count VI)
and is not entitled to a constructive trust (Count X) ............................... 23

        3.    Civil conspiracy (Count IX) is not a standalone cause of action and
should be dismissed ..................................................................................... 24

V.    CONCLUSION ................................................................................................................ 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*135 Flat LLC v. Triadou SPY S.A.*,
No. 15-CV-5345 (AJN), 2016 WL 5945933 (S.D.N.Y. June 21, 2016) ................................18

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*,
944 F.2d 971 (2d Cir. 1991)...................................................................................................10

*Achtman v. Kirby, McInerney & Squire, LLP*,
464 F.3d 328 (2d Cir. 2006)...................................................................................................13

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
106 F.3d 11 (2d Cir. 1997).......................................................................................................9

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
671 F.3d 140 (2d Cir. 2011).....................................................................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937 (2009) .................................................................................9, 21

*Atlanta Shipping Corp., Inc. v. Chem. Bank*,
818 F.2d 240 (2d Cir. 1987)...................................................................................................22

*Bergesen v. Joseph Muller Corp.*,
710 F.2d 928 (2d Cir. 1983)...................................................................................................20

*CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*,
850 F.3d 58 (2d Cir. 2017).....................................................................................................17

*Cipciao, LLC v. M Chow One, LLC*,
No. 20-CV-5982 (JMF), 2021 WL 1141567 (S.D.N.Y. Mar. 24, 2021) ................................24

*City of Almaty, Kazakhstan v. Ablyazov*,
No. 15-CV-5345 (AJN), 2020 WL 2896683 (S.D.N.Y. June 1, 2020),
*reconsideration denied*, No. 15-CV-5345 (AJN), 2021 WL 1180058
(S.D.N.Y. Mar. 29, 2021) ..................................................................................................13, 15

*Commonwealth of Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan
Stanley & Co.*,
25 N.Y.3d 543, 35 N.E.3d 481 (2015)....................................................................................12

*Connecticut v. Physicians Health Servs. Of Connecticut, Inc.*,
287 F.3d 110 (2d Cir. 2002).....................................................................................................9

*Corsello v. Verizon New York, Inc.*,
   18 N.Y.3d 777, 944 N.Y.S.2d 732, 967 N.E.2d 1177 (2012)..................................24

*Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l*,
   790 F.3d 411 (2d Cir. 2015)...........................................................................8, 9, 10, 11

*Daebo Int'l Shipping Co. v. Americas Bulk Transp. (BVI) Ltd.*,
   No. 12 CIV. 4750 PAE, 2013 WL 2149591 (S.D.N.Y. May 17, 2013) ..................17

*Daimler AG v. Bauman*,
   571 U.S. 117, 134 S.Ct. 746 (2014)........................................................................14

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332, 126 S.Ct. 1854 (2006)......................................................................10

*Dexia SA/NV v. Stanley*,
   135 A.D.3d 497, 22 N.Y.S.3d 833 (1st Dep't 2016) ...............................................12

*DRC, Inc. v. Republic of Honduras*,
   71 F. Supp. 3d 201 (D.D.C. 2014) ..........................................................................17

*Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*,
   403 F.3d 85 (2d Cir. 2005)........................................................................14, 15, 20

*First Baptist Church of Glendarden v. New Mkt. Metalcraft, Inc.*,
   No. AW-10-00543, 2010 WL 3037030 (D. Md. July 30, 2010) ............................17

*In re First Cent. Fin. Corp.*,
   377 F.3d 209 (2d Cir. 2004)....................................................................................23

*First Inv. Corp. of Marshall Islands v. Fujian Mawei Shipbuilding, Ltd.*,
   703 F.3d 742 (5th Cir. 2012) ...............................................................................5, 6

*Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*,
   582 F.3d 393 (2d Cir. 2009)....................................................................................14

*GE Transportation (Shenyang) Co. v. A-Power Energy Generation Sys., Ltd.*,
   No. 15 CIV. 6194 (PAE), 2016 WL 3525358 (S.D.N.Y. June 22, 2016) ...............18

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915, 131 S.Ct. 2846 (2011)......................................................................14

*HBE Leasing Corp. v. Frank*,
   61 F.3d 1054 (2d Cir. 1995)....................................................................................22

*HDtracks.com, LLC v. 7digital Grp. PLC*,
   No. 18 CIV. 5823 (JFK), 2019 WL 6170838 (S.D.N.Y. Nov. 19, 2019)................14

*Hollingsworth v. Perry*,
   570 U.S. 693, 133 S. Ct. 2652 (2013)........................................................................10

*House of Eur. Funding I, Ltd. v. Wells Fargo Bank, N.A.*,
   No. 13-cv-519-RJS, 2014 WL 1383703 (S.D.N.Y. Mar. 31, 2014) ........................................11

*HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*,
   No. 20-CV-00967 (LJL), 2021 WL 918556 (S.D.N.Y. Mar. 10, 2021) .................................19

*Innovative Custom Brands, Inc. v. Minor*,
   No. 15-CV-2955 (AJN), 2016 WL 308805 (S.D.N.Y. Jan. 25, 2016) ...................................24

*Int'l Bhd. of Elec. Workers, Loc. No. 265 v. O.K. Elec. Co.*,
   793 F.2d 214 (8th Cir. 1986) ........................................................................17

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
   500 F.3d 111 (2d Cir. 2007)........................................................................20

*Kaye v. Grossman*,
   202 F.3d 611 (2d Cir. 2000)........................................................................23

*Kim v. Ji Song Yoo*,
   311 F. Supp. 3d 598 (S.D.N.Y. 2018)........................................................................22

*Klein & Co. Fixtures v. Bd. Of Trade of City of New York*,
   464 F.3d 255 (2d Cir. 2006)........................................................................16

*Kolari v. New York-Presbyterian Hosp.*,
   455 F.3d 118 (2d Cir. 2006)........................................................................15

*Kovkov v. L. Firm of Dayrel Sewell, PLLC*,
   182 A.D.3d 418, 119 N.Y.S.3d 849 (1st Dep't 2020) ...........................................24

*Leeward Const. Co. v. Am. Univ. of Antigua-Coll. of Med.*,
   No. 12 CIV. 6280 LAK, 2013 WL 1245549 (S.D.N.Y. Mar. 26, 2013) *aff'd
   sub nom.* 826 F.3d 634 (2d Cir. 2016) ........................................................18

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555, 112 S. Ct. 2130 (1992) ................................................................8, 12

*Lyndonville Sav. Bank & Tr. Co. v. Lussier*,
   211 F.3d 697 (2d Cir. 2000)........................................................................13, 14, 15

*Nat'l Football League Players Ass'n v. Nat'l Football League Mgmt. Council*,
   523 F. App'x 756 (2d Cir. 2013) ................................................................15

*Omni Capital Int'l v. Rudolf Wolff & Co.*,
   484 U.S. 97, 108 S.Ct. 404 (1987)........................................................................16

*Orion Shipping & Trading Co. v. Eastern States Petroleum Corp.*,
    312 F.2d 299 (2d Cir. 1963).....................................................................................14, 15, 18

*In re Platinum-Beechwood Litig.*,
    377 F. Supp. 3d 414 (S.D.N.Y. 2019)...................................................................................24

*Rajamin v. Deutsche Bank Nat'l Trust Co.*,
    757 F.3d 79 (2d Cir. 2014)...................................................................................................20

*Ray v. Ray*,
    No. 18 CIV. 7035 (GBD), 2019 WL 1649981 (S.D.N.Y. Mar. 28, 2019) ......................22, 23

*Royal Park Invs. SA/NV v. Morgan Stanley*,
    165 A.D.3d 460, 86 N.Y.S.3d 14 (1st Dep't 2018) ..............................................................12

*In re Sharp Int'l Corp.*,
    403 F.3d 43 (2d Cir. 2005)....................................................................................................22

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
    750 F.3d 221 (2d Cir. 2014)..................................................................................................14

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*,
    554 U.S. 269, 128 S. Ct. 2531 (2008)......................................................................................9

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83, 118 S.Ct. 1003 (1998).........................................................................................8

*Thole v. U.S. Bank N.A*,
    140 S. Ct. 1615 (2020)..............................................................................................................9

*Tr. v. Kummerfeld*,
    153 F. App'x 761 (2d Cir. 2005) ...........................................................................................18

*Turner v. Temptu Inc.*,
    No. 11 CIV. 4144 JMF, 2013 WL 4083234 (S.D.N.Y. Aug. 13, 2013), *aff'd*,
    586 F. App'x 718 (2d Cir. 2014) ...........................................................................................23

*United Mine Workers of Am. v. Gibbs*,
    383 U.S. 715, 86 S.Ct. 1130 (1966).......................................................................................13

*United States v. Watts*,
    786 F.3d 152 (2d Cir. 2015)...................................................................................................22

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008)................................................................................................8, 9

*Warth v. Seldin*,
    422 U.S. 490, 95 S.Ct. 2197 (1975).........................................................................................8

*Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*,
    103 F.3d 9 (2d Cir. 1997).............................................................................................14

*Zeiler v. Deitsch*,
    500 F.3d 157 (2d Cir. 2007)....................................................................................6, 15

**Statutes**

9 U.S.C. §§ 6, 208 .........................................................................................................7

9 U.S.C. § 9 ..................................................................................................................17

9 U.S.C. § 204 ..............................................................................................................14

9 U.S.C. § 207 ..............................................................................................5, 10, 14, 17

28 U.S.C. § 1367 ..........................................................................................................13

28 U.S.C. § 1367(c) ................................................................................................15, 16

New York Debtor & Creditor Law § 273 ...............................................................21, 22

Uniform Voidable Transactions Act, 2019 McKinney's Session Law News of
    NY, No. 580 at A-5622 [Dec. 2019]...........................................................................21

NY CPLR § 213(8) ......................................................................................................21

**Rules**

Fed. R. Civ. P. 9(b) .....................................................................................................24

Fed. R. Civ. P. 12(b)(1).................................................................................................7

Fed. R. Civ. P. 12(b)(6)...............................................................................................16

**Other Authorities**

5 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1202 (3d ed.
    2008) ..........................................................................................................................21

## MEMORANDUM AND POINTS OF AUTHORITIES

Defendants Symbion Power, LLC, Symbion Power Holdings, LLC, Symbion Power Services U.S., Inc., and Symbion Power Africa, LLC (collectively, the "U.S. Defendants"), submit this memorandum in support of their motion to dismiss the Complaint of Plaintiff RSS Judgment Enforcement LLC.[1]

## I.  INTRODUCTION AND SUMMARY OF ARGUMENT.

This case involves an Arbitration Award entered in the United Kingdom, against Defendant Symbion Power Tanzania Limited ("Symbion Tanzania"), a Tanzanian entity, and in favor of non-party Rental Solutions and Services LLC ("RSS"), an Emiratis company. Plaintiff was purportedly assigned the Award by RSS as part of an apparent litigation-funding operation. It now seeks to collect.

But this lawsuit is not just about enforcing an arbitration award against the award-debtor. Plaintiff also seeks to recover from six entities and two individuals, none of whom were parties to the arbitration proceeding or the underlying arbitration agreements. And Plaintiff asserts a hodgepodge of claims, hoping to, somehow, shift liability for a $30 million Award against

---

[1] The U.S. Defendants file this motion solely on their behalf, and not on behalf of any other Defendant named in this lawsuit. Nothing in the U.S. Defendants' motion or this memorandum is intended or should be construed as a waiver of any rights or defenses of the other Defendants, and all such rights and defenses are hereby reserved, including but not limited to the following affirmative defenses:

(1)     that the Court lacks subject matter jurisdiction over this action;

(2)     that the Court lacks personal jurisdiction over some or all of the other Defendants;

(3)     that venue is improper in the Southern District of New York;

(4)     that the Complaint should be dismissed for forum non conveniens;

(5)     that process is insufficient as to the other Defendants;

(6)     that Plaintiff has not sufficiently served the other Defendants with process, in accordance with applicable law, and that any attempted service is defective; and

(7)     that Plaintiff's Complaint fails to state a claim or cause of action for which relief can be granted.

Symbion Tanzania to the U.S. Defendants.  Plaintiff's claims against the U.S. Defendants are baseless and should be dismissed for the following reasons.

*Standing.*  To begin, Plaintiff is in the peculiar position of trying to litigate claims that are not its own.  Plaintiff conclusorily alleges that RSS assigned it the Arbitration Award.  But for an assignee to have standing under Article III, it must, at a minimum, receive title to or ownership of each claim it seeks to assert.  Plaintiff has not plausibly alleged it obtained such rights.  The Complaint's singular legal conclusion — that "RSS assigned the Award" — falls well short of carrying Plaintiff's burden to plead standing.  Nor has Plaintiff produced a valid assignment, or explained how an assignment of "the Award" would confer Plaintiff rights to bring tort and equitable causes of action against the U.S. Defendants, who have no prior dealings with Plaintiff or RSS.  Under these circumstances, standing is absent.

*Supplemental Jurisdiction.*  Even if Plaintiff has standing, the Court lacks supplemental jurisdiction over Plaintiff's state-law claims.  The issues raised by those claims have nothing to do with confirming the Arbitration Award — this Court's only basis for original jurisdiction.  While the New York Convention and Federal Arbitration Act ("FAA") focus the confirmation analysis on the Award itself, Plaintiff's other claims raise fact-intensive, multi-faceted questions about alter ego and alleged asset transfers that date back more than a decade.  Such questions are not well-suited for a "summary proceeding" under the FAA.  And the Second Circuit has long advised against entangling confirmation actions in ancillary matters like these.

*Failure to State a Claim.*  Even if Plaintiff has standing and the Court has supplemental jurisdiction, Plaintiff's claims against the U.S. Defendants all fail on the merits, beginning with its claim under the FAA.  Indeed, the Complaint should be dismissed insofar as it seeks to confirm the Award against the U.S. Defendants.  RSS arbitrated against Symbion Tanzania, not the U.S.

Defendants.  And the tribunal issued an award that requires Symbion Tanzania — not the U.S. Defendants — to pay damages to RSS.  The Court need not and should not modify the Award by entering a judgment against the U.S. Defendants on top of Symbion Tanzania.  Besides, Plaintiff's alter-ego allegations are conclusory and do not justify disregarding the U.S. Defendants' corporate forms.  Plaintiff's remaining claims against the U.S. Defendants are likewise subject to dismissal. Plaintiff has not pleaded facts supporting each of the elements of its actual and constructive fraud claims, cannot maintain a duplicative claim for unjust enrichment and, by extension, is not entitled to a constructive trust, and cannot maintain a claim for civil conspiracy which is not a standalone claim for relief.

In sum, the Court should grant the U.S. Defendants' motion to dismiss.

## II.   FACTUAL AND PROCEDURAL BACKGROUND.

### A.   The U.S. Defendants.

The U.S. Defendants are four Delaware business entities with principal places of business in New York: Symbion Power Services U.S., Inc. ("Symbion Services"); Symbion Power, LLC ("Symbion Power"); Symbion Power Holdings, LLC ("Symbion Power Holdings"); and Symbion Power Africa, LLC ("Symbion Africa").  Dkt. 1 ("Compl.") ¶¶ 5, 10–11, 13.  As alleged,[2] Symbion Power and Symbion Africa are wholly owned by Symbion Power Holdings, which is, in turn, owned in part by Defendants Paul Hinks and Richard Westbury ("Individual Defendants"). Compl. ¶¶ 5, 10–11, 32.

---

[2] The U.S. Defendants assume, as they must, the truth of the well-pleaded allegations in the Complaint for purposes of this motion.  The U.S. Defendants note, however, that many of those allegations are wrong, and the U.S. Defendants deny liability and deny that Plaintiff is entitled to the relief requested or to any other relief.

Plaintiff has no relationship with the U.S. Defendants.  The U.S. Defendants were not parties to any contracts and had no business dealings with Plaintiff or Plaintiff's alleged predecessor in interest, RSS.  Rather, Plaintiff tries to lump the U.S. Defendants together with the other five Defendants to hold all Defendants liable for an Arbitration Award entered against one Defendant: Symbion Tanzania.

**B.     The Arbitration and the Award.**

This case arises from an Arbitration Award issued in 2018, following a dispute between RSS and Symbion Tanzania about payment for services rendered in connection with power-generating projects.  Dkt. 1-1 ("Award") ¶¶ 1, 3, 6, 9.  Symbion Tanzania constructed emergency power plants in two Tanzanian cities.  Award ¶¶ 1, 26, 28.  Power generated from those plants Symbion Tanzania sold to the Tanzania Electricity Supply Company ("TANESCO").  Compl. at 2; Award ¶¶ 25, 31, 34.  In 2011, Symbion Tanzania contracted with RSS — a company organized under the laws of the United Arab Emirates — to supply equipment at its power plants.  Award ¶¶ 6, 26, 28.   The operative agreements and later iterations of them (collectively, the "Agreements") were all signed by Symbion Tanzania's CEO, and RSS' managing director.  Award ¶¶ 26, 28, 38–39.  Those Agreements expired in mid-2014, after which RSS removed its equipment from both sites.  Award ¶ 48.

Very early on, however, tensions started building between RSS and Symbion Tanzania. Award ¶ 31.   In short, RSS' invoices were not being paid on time, the parties disagreed about RSS' tax liabilities, and Symbion Tanzania questioned the capacity and performance of RSS' equipment.  Award ¶¶ 71–77, 84–91, 95–103.  Following several stints of negotiations that, in the end, proved unsuccessful, RSS sued Symbion Tanzania in the High Court in Tanzania.  Award ¶ 61.  Under the Agreements, however, the dispute was supposed to be resolved "by arbitration

4

pursuant to the Rules of the UAE or the United Kingdom." Award ¶ 7. So Symbion Tanzania commenced arbitration, and the Tanzanian court dismissed RSS' case for lack of jurisdiction. Award ¶¶ 6, 13, 64.

London served as the seat of the arbitration. It was the venue for both an evidentiary hearing and the tribunal's deliberations. Award ¶¶ 13–25. U.K. procedural law applied, while UAE law governed the substance of the dispute: among other things, the tribunal applied provisions of the UAE Civil Code to interpret the Agreements, evaluated substantive arguments over tax liabilities, past-due invoices, and set-offs under UAE law, and ultimately issued the Award in accordance with the U.K.'s Arbitration Act. Award ¶¶ 148–77, 182–88, 196–207, 215–20, 228–34, 237–40, 241–44.

In the end, the tribunal largely sided with RSS, awarding $26,844,779.99 in claim-related damages plus pre-Award interest, as well as $1,086,161.63 and £28,975.00 in legal and arbitration costs. Award ¶ 264(a)–(b), (e). It also awarded interest on those amounts at "US$ 3-month LIBOR +3%" to be compounded quarterly. Award ¶ 264(f). The Award names only Symbion Tanzania as liable to RSS. Award ¶ 264(a)–(f).

## C.   Procedural History.

Almost three years after the Arbitration Award — and just four days before the New York Convention's statute of limitations expired, 9 U.S.C. § 207 — Plaintiff filed this action claiming that, a day earlier, RSS assigned to Plaintiff the Award. Compl. ¶ 1.[3] In Count I, Plaintiff asks

---

[3] In explaining the importance of jurisdictional constraints in these types of proceedings, the Fifth Circuit envisioned a scenario like this: "Confirming an award also makes it possible that a party, armed with a court judgment, will seek to enforce the award as a foreign judgment elsewhere," which "may, for example, permit a party to circumvent the New York Convention's three-year statute of limitations." *First Inv. Corp. of Marshall Islands v. Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742, 751–52 (5th Cir. 2012). Indeed, it is readily apparent that Plaintiff hurried to file its Complaint to beat the statute of limitations and in doing so, selected a venue lacking any

this Court to recognize the Award against Symbion Tanzania.  Compl. ¶¶ 62–68.  The case is thus

an enforcement action, in essence, which is designed to be a "summary proceeding" focusing on

the Award and not "complex factual determinations." *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d

Cir. 2007).  But in reality, it is not so simple.

Plaintiff has greatly expanded these proceedings.  Besides seeking confirmation of the

Award against Symbion Tanzania, Plaintiff also seeks to confirm the Award against eight other

Defendants, including the U.S. Defendants, none of whom signed the Arbitration Agreements,

were parties to the Arbitration, or are identified in the Award as liable for RSS' damages.  Compl.

¶¶ 78–87; Award ¶¶ 1, 3, 264.  Plaintiff alleges that all eight Defendants are universally liable for

the others' debts as alter egos.  Compl. ¶¶ 69–87.  Plaintiff's theory appears to be that, based on

financial records from 2011–2013, Symbion Tanzania is predominately owned by Symbion Africa,

whose "ultimate parent" is Symbion Power.  Compl. ¶¶ 30–31.  And because the Individual

Defendants serve as managers of Symbion Power, they "ultimately operated and controlled"

Symbion Tanzania, making them, and all the other Defendants, alter egos (or alter egos of alter

egos).  Compl. ¶¶ 29, 33, 69–86.

Plaintiff did not stop with this veil-piercing theory.  To Plaintiff's FAA claim the

Complaint adds eight Counts under state law:[4]  "Alter Ego/Veil Piercing" (Count II); actual and

constructive fraudulent transfer claims (Count IV and Count V); unjust enrichment (Count VI);

---

connection to the Arbitration or the parties to the Arbitration, prompting Plaintiff to name the U.S.
Defendants in a desperate attempt to support jurisdiction.  *See id.* (noting the relevance of
"constitutional protections that enable a party to defend itself against being called into court in a
jurisdiction with which the party has no contacts").

[4] Despite Plaintiff's pleading, it is not at all clear what law or laws govern this dispute.
Performance of the Agreements occurred in Tanzania, the arbitration was conducted in the U.K.,
and the substantive law of the UAE applied at those proceedings.  For purposes of this motion
only, however, the U.S. Defendants will assume that New York and Delaware law applies to
Plaintiff's non-FAA claims, as they are subject to dismissal either way.

fraud as to the Individual Defendants (Count VII and Count VIII); "Civil Conspiracy" (Count IX); and imposition of a constructive trust (Count X).[5]

The result is a patchwork pleading — part petition to enforce the Award, part complaint for damages, and part collection action — that raises serious procedural, jurisdictional, and substantive issues. *Compare* 9 U.S.C. §§ 6, 208 (requiring applications under the New York Convention to be "made and heard in the manner provided by law for the making or hearing of motions," not complaints). On May 28, Plaintiff served the Complaint, together with a copy of the Award and Summons, on the U.S. Defendants' registered agents in Delaware. Dkts. 26–28. No other Defendant had been served at the time, so the U.S. Defendants requested an extension of time to file this motion. Dkt. 29. But Plaintiff opposed the extension, Dkt. 30, and the Court denied it. Dkt. 32.[6] Accordingly, the U.S. Defendants now timely move to dismiss Plaintiff's claims against them.

## III. THE CLAIMS AGAINST THE U.S. DEFENDANTS SHOULD BE DISMISSED UNDER RULE 12(b)(1).

### A. Plaintiff Lacks Standing to Bring Its Claims Against the U.S. Defendants.

All of Plaintiff's claims falter at the start for a basic reason: Plaintiff lacks standing. Plaintiff was not injured by the U.S. Defendants. In fact, Plaintiff has no connection to *any*

---

[5] Counts II, III, IV, V, VI, IX, and X are asserted against the U.S. Defendants and are the subject of this motion.

[6] Plaintiff claims to have served Defendants Paul Hinks (a resident of South Africa), Symbion Energy Holdings Ltd. (a Cypriot holdings company), and Symbion Tanzania (a Tanzanian company), by leaving a copy of the summons and Complaint with a clerk at the Chrysler Building. Dkts. 33–35. According to Plaintiff, service occurred on June 7 — while the parties were discussing extending the U.S. Defendants' response deadline and before the U.S. Defendants moved for an extension of time. Dkt. 29; Dkt. 30-1. But Plaintiff never mentioned this attempt at service, opting to leave Defendants in the dark about it. And Plaintiff did not file the returns of service until over a week later, on June 16. Dkts. 33–35. Defendants deny that Plaintiff sufficiently served Mr. Hinks, Symbion Energy Holdings, and Symbion Tanzania with process under applicable law.

Defendant.  It was not a party to the arbitration.  It is a stranger to the Arbitration Agreements.
And there are no allegations that any wrongdoing was aimed at or even affected Plaintiff.

The only reason for Plaintiff being in Court — the only conceivable way it has standing —
is a purported assignment of the Arbitration Award.  But Plaintiff did not attach an assignment to
the Complaint.  And the total of allegations about the assignment are in just a single sentence —
that "[o]n May 12, 2021, RSS assigned the Award to Plaintiff."  Compl. ¶ 1.  This dogmatic legal
conclusion is ineffectual and does not satisfy Plaintiff's burden to plead standing.

Even assuming it did, the assignment of the Award would not confer Plaintiff carte blanche
access to Article III Courts to pursue any claim that RSS might have had, which were not assigned
to Plaintiff.  At the very least, then, nearly all Plaintiff's state-law claims — Counts II, IV, V, VI,
IX, and X — are subject to dismissal.

          1.      *Plaintiff has neither pleaded facts nor produced an assignment showing that*
                *it is has standing to pursue the claims of RSS, a third party.*

Plaintiff has the burden of establishing federal jurisdiction.  *Lujan v. Defenders of Wildlife*,
504 U.S. 555, 561, 112 S. Ct. 2130, 2136 (1992).  To survive dismissal, the Complaint must allege
facts that "affirmatively and plausibly suggest that [Plaintiff] has standing to sue."  *Amidax
Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).  This requires, "[f]irst, and
foremost" an injury-in-fact.  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103, 118
S.Ct. 1003, 1016 (1998).

"[T]he minimum requirement for an injury-in-fact is that the plaintiff have legal title to, or
a proprietary interest in, the claim[s asserted]."  *Cortlandt St. Recovery Corp. v. Hellas
Telecommunications, S.a.r.l*, 790 F.3d 411, 420 (2d Cir. 2015).  In other words, a claim cannot rest
on "the legal rights or interests of third parties."  *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197,
2205 (1975).  And while "Courts may permit a party with standing to assign its claims," *W.R. Huff*

*Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 107 (2d Cir. 2008), an assignment must "manifest[] [the assignor's] intention to transfer . . . the entire interest of the assignor in the particular subject of assignment," *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17 (2d Cir. 1997) (internal citations omitted).

Vaguely invoking an assignment (as Plaintiff does here) cannot establish injury-in-fact. The Second Circuit has made clear that failing to adequately plead a transfer of "title to, or ownership of, the [asserted] claims" is grounds for dismissal. *Cortlandt St.*, 790 F.3d at 418–20; *see also Connecticut v. Physicians Health Servs. Of Connecticut, Inc.*, 287 F.3d 110, 115–19 (2d Cir. 2002) (ERISA assignment).

Plaintiff's standing allegations do not show that it was assigned title to or ownership of any of the claims it seeks to pursue. Those allegations are in a single, conclusory statement, in which Plaintiff asserts it is an "assignee" of RSS "with respect to a foreign arbitral award against SPTL." Compl. at 1; Compl. ¶ 1. This allegation is "not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 681, 129 S. Ct. 1937 (2009) (citation omitted). It does not explain how Plaintiff obtained the assignment, specify what rights (if any) were assigned, illustrate that the assignment is valid, or show how Plaintiff is permitted to "stand in the place of [RSS]," *Cortlandt St.*, 790 F.3d at 418.

A valid assignment may take someone's property interest in a claim — a "chose in action" — and vest it in another, entitling them to recover personally for the injury. *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 275–78, 128 S. Ct. 2531, 2536–37 (2008). But Plaintiff has not plausibly alleged that it was "legally or contractually assigned" RSS' claims. *Thole v. U.S. Bank N.A*, 140 S. Ct. 1615, 1620 (2020). And without a valid assignment, Plaintiff lacks any "legally protected interest," *W.R. Huff.*, 549 F.3d at 106, in the rights to the Award on which its

entire theory of damages is premised.  *Cortlandt St.*, 790 F.3d at 422 ("[A]bsent a complete assignment of the only claims on which the lawsuit was based, there was no valid lawsuit pending before the district court in which to permit an amended complaint."); *see* 9 U.S.C. § 207 (allowing a "*party* to the arbitration" to seek confirmation of an award) (emphasis added).  Thus, having failed plead or produce the purported assignment, Plaintiff has also failed to show standing.  The Complaint should be dismissed.

> 2.  *Even accepting Plaintiff's conclusory assertion that it was assigned rights in the Arbitration Award, Plaintiff still lacks standing to pursue its state-law tort and equitable claims.*

Further, assuming RSS properly assigned Plaintiff the "*Award*," Compl. ¶ 1 (emphasis added), this would *not* transfer, along with it, the right to pursue any and all causes of action that RSS might assert against the U.S. Defendants from its relationship with Symbion Tanzania.  "[A] plaintiff must demonstrate standing for each claim he seeks to press."  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352, 126 S.Ct. 1854, 1858 (2006) (citation omitted).  And Plaintiff has not alleged that it acquired RSS' claims, without limitation (pretermitting whether RSS could even make such a transfer in the first place).  *Cf. ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991) ("[A] copyright owner can assign its copyright but, if the accrued causes of action are not expressly included in the assignment, the assignee will not be able to prosecute them.").

Nor does the Complaint identify any direct injury to Plaintiff as a result of the U.S. Defendants' alleged conduct.  When litigants "assert the interests of others, the litigants themselves still must have suffered an injury in fact."  *Hollingsworth v. Perry*, 570 U.S. 693, 708, 133 S. Ct. 2652, 2663 (2013) (citation omitted).  Plaintiff cannot satisfy this basic requirement.

Plaintiff's allegations about the U.S. Defendants are thin.  For the most part, they are conclusory statements that, boiled down, simply assert that Symbion Africa owns a majority of

Symbion Tanzania, and that the remaining U.S. Defendants are affiliated with Symbion Power Holdings.  Compl. ¶¶ 29–31, 33, 69–86.  Otherwise, Plaintiff's allegations focus on "insider transfers" gleaned from old, financial statements and (unrelated) court filings — for instance, that in 2011 Symbion Power collected money on Symbion Tanzania's behalf (Compl. ¶ 35); that from 2012 through 2016, Symbion Tanzania transferred money to Symbion Africa to pay down a debt (Compl. ¶¶ 36–38); that Symbion Power made payments to Symbion Tanzania's creditors in September 2011–October 2013 (Compl. ¶¶ 39–40); that one U.S. Defendant paid another for services between 2008 and 2018 (Compl. ¶¶ 42–44); and that Symbion Services was insolvent by July 2016 (Compl. ¶¶ 45–46).

Yet none of these allegations involved Plaintiff directly; in fact, Plaintiff barely mentions itself.  Plaintiff's standing to sue the U.S. Defendants is instead based on its (supposed) status as assignee of RSS.   Indeed, Plaintiff repeatedly cites purported injuries to *RSS* and labels itself — with no explanation — RSS' "successor in interest."   Compl. ¶¶ 90–91, 94, 104–05, 114, 129–32.  But whatever injury (if any) this alleged conduct caused, it occurred *before* RSS could have assigned Plaintiff any relevant rights.  Because Plaintiff alleges it was assigned the Award on May 12, 2021, Compl. ¶ 1, Plaintiff does not (and cannot) allege that the U.S. Defendants breached any duties owed to it through supposed activities that occurred well before then.  Compl. ¶¶ 30, 34–46.  In other words, Plaintiff does not allege that the U.S. Defendants breached any duty to Plaintiff (with no entitlement to the Award), that they did anything to Plaintiff directly (in the one day between assignment and suing or at any other time), or that their conduct even potentially injured anyone but RSS.  *See Cortlandt St.*, 790 F.3d  at 420; *House of Eur. Funding I, Ltd. v. Wells Fargo Bank, N.A.*, No. 13-cv-519-RJS, 2014 WL 1383703, at *11 (S.D.N.Y. Mar. 31, 2014) (dismissing claims brought by plaintiff who was not the owner of any of the underlying assets).  So given the

11

Award was transferred (if at all) years after the U.S. Defendants' purported conduct occurred, that conduct did not (and does not) "affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1, 112 S. Ct. 2130.

The allegations here are like two cases involving assignees of residential mortgage-backed securities. *Royal Park Invs. SA/NV v. Morgan Stanley*, 165 A.D.3d 460, 86 N.Y.S.3d 14 (1st Dep't 2018); *Dexia SA/NV v. Stanley*, 135 A.D.3d 497, 22 N.Y.S.3d 833 (Mem.) (1st Dep't 2016).   In each case, the plaintiffs sought to bring fraud claims based on their purchase of RMBS certificates. *Royal Park*, 165 A.D.3d at 460–61, 86 N.Y.S.3d at 15; *Dexia*, 135 A.D.3d at 497, 22 N.Y.S.3d at 833.   And in each case, the Appellate Division found the plaintiffs lacked standing because the assignment did not "explicitly referenc[e] any related tort claims or the overall transaction between [the assignor] and defendants."  *Dexia*, 135 A.D.3d at 497, 22 N.Y.S.3d at 833; *Royal Park*, 165 A.D.3d at 462, 86 N.Y.S.3d at 14.  *See also Commonwealth of Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 25 N.Y.3d 543, 550–51, 35 N.E.3d 481 (2015) (explaining that an "assignment of fraud or other tort claims" "requires either some expressed intent or reference to [those] causes of action, or some explicit language evidencing the parties' intent to transfer broad and unlimited rights and claims").

Thus, even if the Complaint could be read to allege facts establishing that RSS assigned Plaintiff rights in the Award (and it cannot), that hardly constitutes an assignment of tort and quasi contract claims.  Plaintiff's state-law claims should be dismissed.

**B.      The Court Lacks Supplemental Jurisdiction Over Plaintiff's State-law Claims.**

Plaintiff claims that the Court has federal question jurisdiction under the New York Convention and FAA, and that it may exercise supplemental jurisdiction over Plaintiff's remaining claims since they are all part of the same "case and controversy," namely "enforcement and

collection of the Award."  Compl. ¶ 20.  But collecting money is just Plaintiff's end goal.  It has little to do with whether Plaintiff is entitled to an order from this Court recognizing the Award.

Supplemental jurisdiction is limited to claims that are part of the same "case or controversy" as the claim for which there is original jurisdiction under Article III.  28 U.S.C. § 1367.  Claims are part of the same case or controversy if they "derive from a common nucleus of operative fact."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1139 (1966).  To determine whether federal and state claims derive from a common nucleus of operative fact, courts "have traditionally asked whether the facts underlying . . . [those] claims substantially overlapped" or if "the federal claim necessarily brought the facts underlying the state claim before the court."  *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (citation omitted).  If the claims "rest[] on essentially unrelated facts," supplemental jurisdiction is lacking. *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000)

Applying these principles in *Lydonville*, the Second Circuit held that a federal claim to enforce a criminal restitution order and several state-law claims did not form the same Article III case or controversy.  *Id.* at 700, 702, 704–05.  That "the restitution order was based on a particular loan  . . . for which Lyndonville sought damages under state law" was not sufficient, the Court explained.  *Id.* at 705.  Evidence about the loan was irrelevant to the restitution claim — only the restitution order's validity was at issue.  *Id.*  In other words, "the restitution count was 'just law,' with the existence of a prior valid order as the only operative fact."  *Id.*; *accord City of Almaty, Kazakhstan v. Ablyazov*, No. 15-CV-5345 (AJN), 2020 WL 2896683, at *7 (S.D.N.Y. June 1, 2020) ("[T]he only operative facts for the judgment recognition claim are whether the 2018 U.K. judgment is procedurally valid and enforceable, which is not relevant to the now-dismissed

interpleader claim."), *reconsideration denied*, No. 15-CV-5345 (AJN), 2021 WL 1180058 (S.D.N.Y. Mar. 29, 2021).

The same is true of the FAA and state-law claims here.  Confirming (or vacating) an arbitration award involves a "severely limited" analysis.  *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997).  The "four corners of the dispute" is the only focus, *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp.*, 312 F.2d 299, 301 (2d Cir. 1963), as the Court should simply confirm the award so long as it is procedurally valid and enforceable, 9 U.S.C. § 207; *see Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005).[7]  In other words, Plaintiff's FAA claims are "just law." *Lyndonville*, 211 F.3d at 705.  But Plaintiff's state-law claims deviate far from that.  They raise fact-intensive questions about the Defendants' corporate structures, ownerships, and affiliations, as well as alleged money transfers dating back more than a decade.  The validity of the Award itself, though, does not affect the state-law claims.  And the Second Circuit has already rejected

---

[7] A party to an arbitration, however, can only petition to confirm a foreign arbitral award in the proper venue and where the Court has jurisdiction.  Under the New York Convention, venue is proper in (1) the district that served as the seat of the arbitration, or (2) a district in which the underlying dispute could have been litigated under the federal venue statute.  9 U.S.C. § 204.  But the arbitration here occurred in London, and there is nothing suggesting that Symbion Tanzania and RSS could have brought their claims in the Southern District of New York.  Nor does Symbion Tanzania (located in Tanzania) have any contacts at all with New York that would give rise to personal jurisdiction, and Plaintiff has not alleged any.  *See Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 396 (2d Cir. 2009) (explaining that enforcing a foreign arbitral award under the New York Convention requires personal or quasi in rem jurisdiction over the party ordered to pay).  There is no "affiliatio[n] between [New York] and the underlying controversy," *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S.Ct. 2846, 2851 (2011), and the mere existence of other "Symbion" entities in New York does not somehow — despite Plaintiff's insinuations —  extend jurisdiction to an affiliated company in Tanzania.  *See, e.g.*, *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 136, 134 S.Ct. 746, 760 (2014)); *HDtracks.com, LLC v. 7digital Grp. PLC*, No. 18 CIV. 5823 (JFK), 2019 WL 6170838, at *5 (S.D.N.Y. Nov. 19, 2019).

the idea that claims arising from a broader, alleged conspiracy can be part of the same Article III case or controversy without operative "facts that are legally relevant to both claims." *City of Almaty*, 2020 WL 2896683, at *7 (citing *Lyndonville*, 211 F.3d at 705). Because Plaintiff's federal question claims — seeking to confirm the Arbitration Award — do not involve the same facts as its state-law claims, Plaintiff's state-law claims should be dismissed for lack of subject matter jurisdiction.

Indeed, even apart from this jurisdictional defect, prudential considerations counsel against litigating Plaintiff's state-law claims in this Court. *See* 28 U.S.C. § 1367(c); *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006). Longstanding precedents reveal the correct approach to resolve FAA enforcement claims. They are properly pursued in a "summary proceeding," *Encyclopedia Universalis*, 403 F.3d at 92, where the district court "does little more than give the [arbitration] award the force of a court order," *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007). Allowing parties to inject issues that will require "a potentially voluminous record" "would unduly complicate and protract" this otherwise straightforward proceeding. *Orion Shipping*, 312 F.2d at 301. And that would undermine "the twin goals of arbitration." *Encyclopaedia Universalis*, 403 F.3d at 90. Hence the Second Circuit's instruction: "[N]o other claims are to be adjudicated." *Nat'l Football League Players Ass'n v. Nat'l Football League Mgmt. Council*, 523 F. App'x 756, 760 (2d Cir. 2013) (citation omitted).

Even assuming resolution of state-law claims in an enforcement action would be appropriate in some cases, this is plainly not one of them. The whole notion that Plaintiff can obtain a judgment in this forum against *any* Defendant is already rife with problems. And accepting Plaintiff's invitation to morph this into a quasi-collection case too by adding state-law

15

claims transparently designed to seek, what should be, post-judgment discovery, would "unduly complicate and protract" the case.  The Court should decline.[8]

## IV.   THE CLAIMS AGAINST THE U.S. DEFENDANTS SHOULD BE DISMISSED UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM.

### A.   Plaintiff's FAA Claim (Count III) Is Procedurally Defective and Fails on the Merits.

1.   *Plaintiff cannot confirm the Arbitration Award against the U.S. Defendants who were neither parties to the Arbitration Agreements, nor participants in the underlying arbitration.*

Along with a mishmash of state-law claims, Plaintiff seeks in Count III of the Complaint a judgment confirming the Award against parties that did not participate in the Arbitration: the U.S. Defendants.  There is no basis, however, for this claim against the U.S. Defendants.  RSS signed Arbitration Agreements with Symbion Tanzania — not the U.S. Defendants.  Award ¶¶ 6, 26, 28, 38–39.  When a dispute arose, RSS sued Symbion Tanzania, then arbitrated against Symbion Tanzania — not the U.S. Defendants.  Award ¶¶ 6, 13, 61, 64.  And when the arbitral tribunal issued the Award in RSS' favor, it identified Symbion Tanzania — not the U.S. Defendants — as liable for RSS' damages.  Award ¶ 264(a)–(f).

---

[8] Courts in this Circuit also, in their discretion, decline to exercise supplemental jurisdiction when the Court has dismissed all claims arising under federal law. *See Klein & Co. Fixtures v. Bd. Of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006); 28 U.S.C. § 1367(c).  As described below, Plaintiff's FAA claim against the U.S. Defendants — and all non-parties to the arbitration — fails as a matter of law, and is subject to dismissal for that independent reason.  Which leaves Count I as Plaintiff's only federal-law claim.  And to be sure (assuming Plaintiff was assigned the Award), Symbion Tanzania, the award-debtor, is the proper target of this claim.  But Plaintiff cannot likely carry its burden of establishing that the Court has personal jurisdiction over Symbion Tanzania.  *See supra* note 5.  Symbion Tanzania has not been properly served with process, so there is no personal jurisdiction over it, at any rate.  *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, 108 S.Ct. 404, 405 (1987).  This is why the U.S. Defendants sought an extension of time to file their motion, until every Defendant — especially Symbion Tanzania — had been properly served, to properly raise all these issues for the Court's consideration.  Dkt. 29.

The FAA by its terms limits confirmation proceedings to the parties involved in the arbitration. Section 207 allows "any party to the arbitration" to apply to a court "for an order confirming the award as against any other party to the arbitration." 9 U.S.C. § 207 (emphasis added); *accord* 9 U.S.C. § 9 (requiring notice of an application to confirm a domestic arbitration to "be served upon the adverse party"). Given this textual limitation, courts have exercised caution in confirming an arbitral award against a party that did not participate in the arbitration. *See Daebo Int'l Shipping Co. v. Americas Bulk Transp. (BVI) Ltd.*, No. 12 CIV. 4750 PAE, 2013 WL 2149591, at *3–5 (S.D.N.Y. May 17, 2013) (refusing to modify award in favor of prevailing party's successor who was not, itself, a party to the arbitration); *Int'l Bhd. of Elec. Workers, Loc. No. 265 v. O.K. Elec. Co.*, 793 F.2d 214, 216 (8th Cir. 1986) (holding labor arbitration award could not be enforced against related corporate entities that were not parties to the arbitration); *cf. DRC, Inc. v. Republic of Honduras*, 71 F. Supp. 3d 201, 219 (D.D.C. 2014) (dismissing confirmation proceedings against the Republic of Honduras because it was not party to the arbitration).

Attempting to establish whether the U.S. Defendants should be liable for an award entered against Symbion Tanzania would add unnecessary complexity to this proceeding. *See also supra* pp. 15–16. Confirming an award "merely makes what is already a final arbitration award a judgment of the court." *First Baptist Church of Glendarden v. New Mkt. Metalcraft, Inc.*, No. AW-10-00543, 2010 WL 3037030, at *1 (D. Md. July 30, 2010); *see also CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 72 (2d Cir. 2017) (referring to "Enforcement" under the New York Convention as "the reduction to a judgment of a foreign arbitral award"). Yet Plaintiff asks this Court not merely to confirm the Award, but to *modify* it to include the U.S. Defendants even though the Award purports to bind only Symbion Tanzania. If instead the Award is confirmed against Symbion Tanzania alone (as the tribunal intended and the contracting parties

agreed to), Plaintiff would have the opportunity in a later proceeding in an appropriate forum to argue that the other Defendants' assets are amenable to attachment to satisfy Symbion Tanzania's judgment.  *See CF 135 Flat LLC v. Triadou SPY S.A.*, No. 15-CV-5345 (AJN), 2016 WL 5945933, at *12 (S.D.N.Y. June 21, 2016) (citing *Tr. v. Kummerfeld*, 153 F. App'x 761, 763 (2d Cir. 2005)). But the Court need not decide that issue in this case.  *See Leeward Const. Co. v. Am. Univ. of Antigua-Coll. of Med.*, No. 12 CIV. 6280 LAK, 2013 WL 1245549, at *1 (S.D.N.Y. Mar. 26, 2013) (where this Court granted a motion to dismiss as to a defendant alleged to be the award-debtor's alter ego), *aff'd sub nom.* 826 F.3d 634 (2d Cir. 2016); *Orion Shipping*, 312 F.2d at 301 (2d Cir. 1963) ("An action for confirmation is not the proper time for a District Court to 'pierce the corporate veil.'").[9]

        If this Court does reach the alter ego issue, however, it should dismiss Counts II and III with respect to the U.S. Defendants.  Convincing a court to disregard the corporate form is "a difficult task."  *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1458 (2d Cir. 1995).  Delaware law[10] requires allegations establishing "(1) that the parent and the subsidiary operated as a single economic entity and (2) that an overall element of injustice or unfairness is present" that warrants piercing the corporate veil.  *Id.* (alterations and citation omitted).  Conclusorily asserting that one entity

---

[9] Judge Engelmayer has explained that there are only two exceptions to the Second Circuit's half-a-century-old directive, neither of which applies here.  *GE Transportation (Shenyang) Co. v. A-Power Energy Generation Sys., Ltd.*, No. 15 CIV. 6194 (PAE), 2016 WL 3525358, at *6–8 (S.D.N.Y. June 22, 2016).  First, there is no independent basis for subject matter jurisdiction over Plaintiff's state-law claims — just the FAA.  *See id.*, at *6–7; Compl. ¶¶ 15, 20.  And second, aside from a few conclusory allegations couched in the disjunctive, Compl. ¶¶ 85–86, Plaintiff does not allege (nor could it) that any "nonparty to the arbitration is the successor to the arbitration party," Symbion Tanzania.  *GE Transportation*, 2016 WL 3525358, at *7.
[10] Delaware law applies because all four U.S. Defendants are incorporated there.  Compl. ¶¶ 5, 10–11, 13; *City of Long Beach v. Total Gas & Power N. Am., Inc.*, 465 F. Supp. 3d 416, 440 (S.D.N.Y. 2020) ("[U]nder New York choice of law principles, the law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders.") (quoting *Fletcher*, 68 F.3d at 1456).

18

dominated or controlled another is not enough to carry this "heavy burden." *Dev. Co., Ltd. v. GE Microgen, Inc.*, 283 F.R.D. 142, 150 (S.D.N.Y. 2012); *see City of Long Beach v. Total Gas & Power N. Am., Inc.*, 465 F. Supp. 3d 416, 441 (S.D.N.Y. 2020) (where this Court found the Plaintiff failed to sufficiently allege alter ego); *In re BH S & B Holdings LLC*, 420 B.R. 112, 134 (Bankr. S.D.N.Y. 2009) ("[A]t the motion to dismiss stage, it is insufficient to make conclusory allegations of mere domination or control by one entity over another[.]) (citation and alterations omitted), *aff'd as modified*, 807 F. Supp. 2d 199 (S.D.N.Y. 2011).

Plaintiff's Complaint falls woefully short of establishing that the U.S. Defendants are alter egos of Symbion Tanzania: they are separately organized companies under the laws of different countries (the U.S. and Tanzania); they have separate contracts, employees, bank accounts, and financial statements; and they were at all times held out to be separate entities. Compl. ¶¶ ¶¶ 5, 9–11, 13, 22, 28, 30–33, 35–38, 42–44. That the companies were founded by some of the same individuals and have some of the same shareholders or are affiliates of Symbion Tanzania does not make them alter-egos. *See HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, No. 20-CV-00967 (LJL), 2021 WL 918556, at *24 (S.D.N.Y. Mar. 10, 2021) (applying New York law). Nor does incurring debt, paying affiliated entities for services, or making payments to satisfy debts evidence a disregard for the corporate form; they evidence the opposite. Compl. ¶¶ 35–44. And apart from these allegations of ownership and purported transfers, Plaintiff's alter-ego allegations are conclusory. They provide no basis for piercing the corporate veil. *See City of Long Beach*, 465 F. Supp. 3d at 441; *In re RSL COM PRIMECALL, Inc.*, No. 01-11457(ALG), 2003 WL 22989669, at *15–16 (Bankr. S.D.N.Y. Dec. 11, 2003) (finding allegations about subsidiary's undercapitalization, significant overlap of executive officers between parent and subsidiary, ownership interests of directors of the parent in the subsidiary, financial instability of subsidiary,

parent's providing "managerial and other services" to the subsidiary, and parent's use of the subsidiary as a tool to further parent's interests insufficient to state a claim). [11]

  2.  *Plaintiff has failed to produce the "authenticated original award or a duly certified copy" of the Award, and has failed to produce the underlying Arbitration Agreements, as required by the New York Convention.*

Article IV of the New York Convention requires an applicant to produce "(a) [t]he duly authenticated original award or a duly certified copy thereof"; *and* "(b) [t]he original agreement [to arbitrate] . . . or a duly certified copy thereof." *Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 934 (2d Cir. 1983); *see also Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 115 n.1 (2d Cir. 2007).

Plaintiff ignores these basic requirements. While Plaintiff attached a copy of the Award to the Complaint, Dkt. 1-1, there is no original or certified copy or averment by anyone personally involved in the arbitration, verifying its authenticity. And there is no Arbitration Agreement attached to the Complaint as required.

Plaintiff's failure to include the Arbitration Agreements also stymies the ability of the U.S. Defendants to prepare a defense. The U.S. Defendants were not parties to the Agreements. And without them, the U.S. Defendants cannot assess the applicability of the FAA's and New York Convention's already "very limited" grounds for nonrecognition of an arbitration award. *Encyclopaedia Universalis*, 403 F.3d at 90; N.Y. Conv. Art. V(1).[12] Thus, Plaintiff's failure to

---

[11] The Complaint also "does not explain how there would be injustice or unfairness," as there "are no allegations that [Symbion Tanzania] would be unable to satisfy a judgment or that [Plaintiff] could not prosecute its case" without the U.S. Defendants. *City of Long Beach*, 465 F. Supp. 3d at 441.

[12] Assuming, that is, the U.S. Defendants would even be able to assert such defenses in the first place. Third parties to an agreement rarely have standing to challenge the agreement's validity, *see Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79 (2d Cir. 2014), and the U.S. Defendants are neither parties to the Award nor the Arbitration Agreements. This complication is just another

include the Arbitration Agreements not only violates the requirements of the New York Convention, but also undermines the purpose of federal pleading standards. *See* 5 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1202 (3d ed. 2008) (discussing notice).

### B.   Plaintiff's State-law Claims Against the U.S. Defendants Also Fail.

1.   *Plaintiff has not pleaded the elements of actual and constructive fraud (Counts IV and V).*

Plaintiff asserts fraudulent conveyance claims under New York Debtor & Creditor Law ("DCL") § 273.[13]   But Plaintiff has failed to plead facts sufficient to plausibly establish the necessary components of these claims against the U.S. Defendants.

First, Plaintiff has not alleged sufficient details about the transfers it seeks to avoid.  Even under a plausibility standard, Plaintiff's allegations fail.  Plaintiff has not identified a single fraudulent transfer — let alone an actual fraudulent transfer — within the applicable limitations period (since May 13, 2015),[14] articulated how much money was transferred, to whom, for what, and exactly when.  Plaintiff instead ties its claims to "formulaic recitation[s] of the elements" for actual and constructive fraud. *Iqbal*, 556 U.S. at 678 (citation omitted).  Compl. ¶¶ 88–102.  Such allegations are insufficient.

---

reason why the Court should decline to modify the Award to include the U.S. Defendants and should dismiss Counts II and III as to the U.S. Defendants.

[13]   On April 14, 2020, several amendments to the DCL, including to §§ 272, 273, 276 and 278 (shortening the statute of limitations), became effective under the Uniform Voidable Transactions Act. *See* 2019 McKinney's Session Law News of NY, No. 580 at A-5622 [Dec. 2019].  These amendments, however, "only apply to a transfer made or obligation incurred on or after such effective date, but shall not apply to a transfer made or obligation incurred before such effective date, nor shall it apply to a right of action that has accrued before such effective date." *Id.* § 7.  Because the transactions alleged in the Complaint occurred well before April 4, 2020, any reference to the DCL is to as it was written pre-amendment.

[14] The applicable statute of limitations for fraud in New York is 6 years.  NY CPLR § 213(8).

Second, Plaintiff does not plausibly allege that any transfer to a U.S. Defendant lacked consideration.  "[L]ack of fair consideration" is "[a]n essential element" of a DCL § 273 claim. *Atlanta Shipping Corp., Inc. v. Chem. Bank*, 818 F.2d 240, 248 (2d Cir. 1987).  Consideration is "fair" if (1) the property recipient "either (a) convey[ed] property in exchange or (b) discharge[d] an antecedent debt in exchange" and that exchange (2) was "a 'fair equivalent' of the property received" and (3) made "in good faith."  *In re Sharp Int'l Corp.*, 403 F.3d 43, 53 (2d Cir. 2005) (quoting *HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1058–59 (2d Cir. 1995)).  Here, the only mention of any transfer from Symbion Tanzania to a U.S. Defendant are allusions to paying Symbion Africa as far back as 2011.  Compl. ¶¶ 34–38.  Of those, only part of one transfer — $23.8 million paid cumulatively from 2014 through 2016 — would not be barred under the statute of limitations.  Compl. ¶ 38.  But Plaintiff acknowledges that based on Symbion Tanzania's "unaudited management accounts," it made these payments "to pay down insider debt."  Compl. ¶ 38.  This partial discharge of an antecedent debt is consideration.  And there are no allegations suggesting it was not a "fair equivalent" of the payments made, or that it lacked good faith.

Nor has Plaintiff alleged facts showing that Symbion Tanzania was insolvent or became insolvent from these purported payments.  A complaint must allege that when "the transfer took place" "the transferor is insolvent or will be rendered insolvent by the transfer" — i.e., that "the present fair salable value of [the transferor's] assets is less than the amount that will be required to pay [its] probable liability on [] existing debts as they become absolute and matured."  *Ray v. Ray*, No. 18 CIV. 7035 (GBD), 2019 WL 1649981, at *6 (S.D.N.Y. Mar. 28, 2019) (citing *United States v. Watts*, 786 F.3d 152, 165 (2d Cir. 2015); *Kim v. Ji Song Yoo*, 311 F. Supp. 3d 598, 612 (S.D.N.Y. 2018); and DCR § 271(1)), *aff'd*, 799 F. App'x 29 (2d Cir. 2020).  Yet based on Plaintiff's allegations, from "January 2015 through July 2015, TANESCO made a total of (15) payments to

22

[Symbion Tanzania] totaling $13,529,758.23" while Symbion Tanzania was on a payment plan with RSS to pay $1.8 million during that time, Compl. ¶¶ 47, 52–54, and Symbion Tanzania "generated approximately $116,000,000.00 in revenue from TANESCO" over three years, Compl. at 2; *see also* Award ¶¶ 25, 31, 34 (discussing contract with TANESCO and payments to Symbion Tanzania). These facts do not plausibly allege that Symbion Tanzania was insolvent. *See Ray*, 2019 WL 1649981, at *8 ("[T]o enable a court to evaluate the sufficiency of a complaint's insolvency allegations on a motion to dismiss, the court looks for some sort of 'balance sheet' test or information provided that the court can use to infer that the transferor's liabilities exceeded their assets at the time the transfers took place."). Counts IV and V should be dismissed.

2.   *Plaintiff has not stated a claim for unjust enrichment (Count VI) and is not entitled to a constructive trust (Count X).*

The legal standards for Plaintiff's unjust enrichment and constructive trust claims materially overlap. A claim for unjust enrichment requires allegations (1) "that the defendant benefitted"; (2) "at the plaintiff's expense"; and (3) "that 'equity and good conscience' require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (citation omitted). A constructive trust, meanwhile, is only imposed upon showing "(1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of the subject res made in reliance on that promise; and (4) unjust enrichment." *In re First Cent. Fin. Corp.*, 377 F.3d 209, 212 (2d Cir. 2004) (citation omitted). Most important is the fourth element, *id.* — as a result, "a constructive trust will not be imposed absent a finding of unjust enrichment," *Turner v. Temptu Inc.*, No. 11 CIV. 4144 JMF, 2013 WL 4083234, at *10 n.3 (S.D.N.Y. Aug. 13, 2013), *aff'd*, 586 F. App'x 718 (2d Cir. 2014).

Plaintiff's unjust enrichment and constructive trust claims both fail. The unjust enrichment claim presumes the same facts as RSS' breach of contract claim from the arbitration and Plaintiff's

actual and constructive fraud claims here.  But "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."  *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 967 N.E.2d 1177, 1185 (2012); *In re Platinum-Beechwood Litig.*, 377 F. Supp. 3d 414, 427 (S.D.N.Y. 2019).  Nor has Plaintiff alleged "a sufficiently close relationship" between Plaintiff or RSS on the one hand, and the U.S. Defendants on the other — indeed, they had "no dealings with each other and were not [even] aware of each other's existence" before this case.  *City of Long Beach*, 465 F. Supp. 3d at 451.  Also, as discussed above, Plaintiff has not pleaded adequate facts about the alleged transfers underlying its claim.  *See supra* Part IV.B.1; *Innovative Custom Brands, Inc. v. Minor*, No. 15-CV-2955 (AJN), 2016 WL 308805, at *4 (S.D.N.Y. Jan. 25, 2016) (finding Rule 9(b)'s heightened pleading requirements applicable to unjust enrichment claim the "gravamen of which" was "plainly fraud").  Plaintiff's unjust enrichment claim is therefore subject to dismissal.  *See Cipciao, LLC v. M Chow One, LLC*, No. 20-CV-5982 (JMF), 2021 WL 1141567, at *6 (S.D.N.Y. Mar. 24, 2021) (dismissing unjust enrichment claim where valid contract existed); *Innovative Custom Brands, Inc. v. Minor*, No. 15-CV-2955 (AJN), 2016 WL 308805, at *4 (S.D.N.Y. Jan. 25, 2016) (dismissing unjust enrichment claim based on fraudulent transfers).  And by extension, Plaintiff's claim for a constructive trust too must be dismissed.

> 3. *Civil conspiracy (Count IX) is not a standalone cause of action and should be dismissed.*

Plaintiff's ninth cause of action should be dismissed because civil conspiracy is not a standalone claim for relief, but a potential way to impose liability for an underlying cause of action. *See Kovkov v. L. Firm of Dayrel Sewell, PLLC*, 182 A.D.3d 418, 119 N.Y.S.3d 849 (1st Dep't 2020).  Consequently, Count IX should be dismissed.

**V.      CONCLUSION.**

For these reasons, the Court should grant the U.S. Defendants' Motion to Dismiss.

Dated: New York, New York
　　　　June 18, 2021

　　　　　　　　　　　　　　　　　TROUTMAN PEPPER HAMILTON
　　　　　　　　　　　　　　　　　SANDERS LLP

　　　　　　　　　　　　　　　By:  *s/ Brett D. Goodman*
　　　　　　　　　　　　　　　　　　　Brett D. Goodman
　　　　　　　　　　　　　　　　　　　875 third Avenue
　　　　　　　　　　　　　　　　　　　New York, New York 10022
　　　　　　　　　　　　　　　　　　　(212) 704-6000

　　　　　　　　　　　　　　　　　　　*Attorneys for Defendants*
　　　　　　　　　　　　　　　　　　　*Symbion Power Africa, LLC, Symbion*
　　　　　　　　　　　　　　　　　　　*Power Holdings, LLC, Symbion Power*
　　　　　　　　　　　　　　　　　　　*Services U.S., Inc., and Symbion Power,*
　　　　　　　　　　　　　　　　　　　*LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the foregoing ***Memorandum of Law In Support of Defendants' Motion to Dismiss*** was electronically filed using the Court's CM/ECF system, which will transmit Notices of Electronic Filing to all counsel of record.

This 18th day of June, 2021.

*s/ Brett D. Goodman*
Brett D. Goodman
