# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RSS JUDGMENT ENFORCEMENT LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>SYMBION POWER TANZANIA LIMITED, SYMBION POWER, LLC, PAUL HINKS, RICHARD WESTBURY a/k/a RICHARD BETHELL,<br>R.W. CHELSEA HOLDINGS LTD, SYMBION POWER HOLDINGS, LLC, SYMBION POWER SERVICES U.S., INC, SYMBION POWER AFRICA, LLC, SYMBION ENERGY HOLDINGS LTD,<br><br>*Defendants*. | Case No. 1:21-CV-04331-LAK<br><br>Hon. Lewis A. Kaplan<br><br>**AFFIDAVIT OF PAUL HINKS IN OPPOSITION TO MOTIONS FOR ATTACHMENT AND EXPEDITED DISCOVERY AND IN SUPPORT OF MOTIONS TO DISMISS** |

I, Paul Hinks, do hereby state that the following are true and accurate under the pains and penalties of perjury:

1. By submitting this affidavit, I do not waive my ongoing objection to this court's personal jurisdiction.

2. I was born in the United Kingdom, and I am a British national who resides within South Africa and at various times in other African countries depending on where Symbion entities have had projects, including in the past in Tanzania.

3. I am not and have never been a resident of the state of New York or the United States. My wife, who is from New York, still leases an apartment in New York, where I stay from time to time.

4. I am the Chief Executive Officer and/or Manager of Symbion Energy Holdings, LTD, Symbion Power Africa, LLC, Symbion Power Holdings, LLC, Symbion Power Services U.S., Inc., and Symbion Power, LLC (collectively, the "Symbion Companies") and several other Symbion entities in various countries. Generally, the Symbion Companies are involved in energy projects in Africa, the Middle East, and Asia. At present all of Symbion's business is in Africa.

5. Symbion Power Africa, LLC, Symbion Power Holdings, LLC, Symbion Power Services U.S., Inc., and Symbion Power, LLC are Delaware companies with a business office in New York; however, since 2019, it has been a virtual office that is subleased from a service office company with no employees physically located there. Symbion Power Services U.S., Inc. has two off-site employees based in the U.S.

6. Richard Westbury is a British national who resides in Cyprus and in part in South Africa.

7. Symbion Energy Holdings LTD. and R.W. Chelsea are Cyprus companies that have no registered office, registered agent, or employees in New York or the United States; nor have they ever operated, conducted business, or entered into contracts with non-Symbion entities in New York or the United States.

8. I am also a Director of Symbion Power Tanzania Limited ("Symbion Tanzania"). As such, I have direct personal knowledge of the organizational structure of Symbion Tanzania and its relationship to affiliated Symbion Companies, including its parent and sister companies. I am familiar with business dealings of Symbion Tanzania at a high level and with its dispute with Rental Solutions and Services LLC ("RSS").

9. I am aware that, on or around September 25, 2011, Symbion Tanzania entered into an agreement with RSS, a company formed under the laws of the United Arab Emirates, whereby RSS would supply Symbion Tanzania with containerized, short term power generating equipment related to a powerplant that would supply power to the Tanzania Electricity Supply Company ("TANESCO") in Dodoma, Tanzania under a contract with Symbion Tanzania.

10. On or around February 19, 2012, Symbion Tanzania entered into a second agreement with RSS to provide power generating equipment at powerplants operated by TANESCO at Arusha and Dodoma sites in Tanzania. I refer to both the September 25, 2011 and February 19, 2012 Agreements as the "Agreements."

11. From the outset of their contractual relationship, Symbion Tanzania and RSS had a number of disputes related to payment of RSS's invoices. For example, there were disputes about who was responsible for RSS's tax obligations and/or withholdings, and whether its work was consistent with its obligations under the Agreements. RSS often threatened to stop service which would have placed Symbion Tanzania in breach of the law. These disputes occurred within Tanzania over a Tanzanian project.

12. In April 2016, RSS commenced a proceeding against Symbion Tanzania in the High Court of Tanzania relating to these disputes. The dispute resolution clause in the Symbion Tanzania and RSS contract mandated arbitration proceedings outside Tanzania.

13. On May 3, 2016, Symbion Tanzania initiated arbitration proceedings in London related to disputes arising from the Agreements (the "Arbitration"). As part of these proceedings, RSS submitted a counterclaim against Symbion Tanzania. The reason that Symbion Tanzania initiated the arbitration proceedings in London is because that is the forum that the Agreements require.

14. These disputes arose entirely outside of the United States and involved the work RSS performed for Symbion Tanzania in the United Republic of Tanzania.

15. Ultimately, as a result of the Arbitration, the tribunal rendered an award in favor of RSS in the amount of $26,844,776.99 in outstanding rental payments, plus interest, costs, and fees (the "Award").

16. After the Award was issued, Symbion Tanzania and RSS began to negotiate a resolution to the dispute in good faith, and it appeared that a mutually acceptable resolution was imminent.

17. However, before the parties could finally resolve this matter, Symbion Tanzania was notified that RSS purportedly transferred the Award to Plaintiff, who filed suit in the United States District Court for the Southern District of New York. I have never heard of RSS Judgment Enforcement LLC ("Plaintiff") until now, which I understand purports to be a Nevada limited liability company.

18. I am informed that Plaintiff also petitioned the courts of the United Kingdom for confirmation of the Award, which petition is still pending.

19. I am aware that Plaintiff alleges that various corporate parents and affiliates of Symbion Tanzania made improper intercompany transfers that Plaintiff alleges were efforts to hide Symbion Tanzania's assets. Further, I understand that Plaintiff argues that these corporate entities, including Symbion Tanzania, act as "alter egos" for each other and do not have separate and independent corporate identities. Plaintiff is wrong.

20. Symbion Tanzania is a registered Tanzanian company with no registered office in New York or the United States.

21. Symbion Tanzania owns and operates two power projects in Tanzania.

22. Symbion Tanzania has no bank accounts or assets in New York or the United States and has no registered agent for service of process in the United States.

23. Symbion Tanzania has no employees in New York or the United States.

24. Symbion Tanzania has never operated or conducted business in New York or the United States, nor does it have any contracts with non-Symbion entities in New York or the United States.

25. Symbion Tanzania is not financially dependent on any of its parent companies or affiliates.  While Symbion Tanzania occasionally received intercompany loans for working capital, Symbion Tanzania operates as an independent and self-supporting entity.  Any intercompany loans received or paid by Symbion Tanzania were properly recorded in its financial statements and were made in the ordinary course of business.

26. Symbion Tanzania at all times maintained appropriate corporate formalities, distinct from the other Symbion Companies.  Symbion Tanzania is separately organized under the laws of Tanzania; it has separate contracts, employees, bank accounts, and financial statements; and it was at all times held out to be separate from the other Symbion Companies.  Plaintiff's ongoing assertion that Symbion Tanzania and the other Symbion Companies disregarded these formalities is not correct.

## EQUIPMENT PURCHASE REPAYMENTS TO SYMBION POWER AFRICA

27. Symbion Tanzania is owned 99.99% by Symbion Power Africa LLC and .01% by Symbion Power Holdings LLC.  In the ordinary course of business Symbion Tanzania purchased equipment from Symbion Power Africa LLC such as gas turbines, step up transformers, gas

regulating skids, and various other equipment related to the operations of the power projects in Tanzania. Payments relating to these invoices were made over a period of time by Symbion Tanzania to Symbion Power Africa LLC. I am not familiar with every payment rendered by Symbion Tanzania, so I have looked into the payments discussed in the Marks Affidavit in the section called "SPTL's Insider Transfers." I describe my findings in the below paragraphs 28-35.

28. Plaintiff asserts that Symbion Tanzania paid down approximately $6.5 million in debt it owed to Symbion Power Africa. This payment was for the purpose of paying for the purchase of equipment related to the operation of the power projects in Tanzania and was paid over time by Symbion Tanzania. *See* Marks Aff. ¶ 16.

29. Plaintiff also asserts that in 2013, Symbion Tanzania paid down approximately $12.8 million of a debt it purportedly owed to Symbion Power Africa. This payment was for the purpose of paying the purchase of equipment related to the operation of the power projects in Tanzania that was paid over time by Symbion Tanzania. *See* Marks Aff. ¶ 17.

30. Plaintiff next asserts that from 2014 through 2016, Symbion Tanzania transferred approximately $23.8 million to Symbion Power Africa. *See* Marks Aff. ¶¶ 18-21. Again, this was for the purpose of paying for the purchase of equipment related to the operation of the power projects in Tanzania. That was paid over time by Symbion Tanzania.

31. Thus, as part of the $23.8 million in transactions in 2013, 2014, and 2015, Symbion Tanzania paid to Symbion Power Africa LLC amounts of $12,800,000, $7,838,343.31, and $2,450,000 in 2013, 2014, and 2015 respectively. *See* Marks Aff. ¶¶ 19-20. This was to pay

for the purchase of equipment related to the operation of the power projects in Tanzania and was paid over time by Symbion Tanzania.

32. In 2016, Symbion Tanzania paid to Symbion Power Africa LLC amount of $811,893.52. This was also payment towards the invoices for the purchasing of equipment related to the operation of the power projects in Tanzania and were paid over time by Symbion Tanzania. *See* Marks Aff. ¶ 21.

33. As can be seen above, nothing about these transactions reflect a nefarious attempt by Symbion Tanzania to shield or "siphon" assets. Instead, these transactions were made as part of the normal course of business to manage the finances of Symbion Tanzania. I understand that all of these payments were for fair consideration or reasonable equivalent value and were not made with the intent to defraud or hinder creditors of Symbion Tanzania.

34. In addition to the above, Plaintiff asserts that Symbion Tanzania is insolvent. Plaintiff is wrong. Symbion Tanzania is solvent.

35. Plaintiff references an email that I wrote in July 2015 which states: "payments were made from Symbion LLC in the US via Symbion TZ because SPTZ [Symbion Tanzania] couldn't even pay it's salaries". (Marks Aff., ¶ 22.) Plaintiff takes this email out of context. The email and statement refer to an isolated situation where an intercompany loan was made in the ordinary course of business to pay salaries of Symbion Tanzania employees, which transaction was properly recorded on the books and records of Symbion Tanzania.

36. Additionally, Plaintiff refers to a memorandum dated August 30, 2016, in which I purportedly stated "from now on every Symbion territory must fend for itself and secure its own

future." Marks Aff. ¶ 9. Again, this memorandum from nearly five years ago was taken out of context, and merely indicated a decision amongst the Symbion Companies to limit future intercompany loans.

## THE ICSID ARBITRATION

37. On May 31, 2019, Symbion Tanzania, myself, and Richard Westbury filed a Request for Arbitration against the United Republic of Tanzania with the International Centre for Settlement of Investment Disputes (the "ICSID Arbitration").

38. The ICSID Arbitration was discontinued on May 31, 2021.

39. All discussions between myself, Richard Westbury, Symbion Tanzania, the Republic of Tanzania, and TANESCO are confidential and subject to a strict confidentiality agreement imposed on us by the Government of the Republic of Tanzania. As a result, I am not at liberty to discuss the substance of the parties' discussions and I will be in breach of the agreement with the government if I did so. They are particularly sensitive about this confidentiality.

40. No part of these discussions touch upon property, bank accounts, entities or any assets whatsoever in the United States.

Dated:   June 23, 2021

By: _____
Paul Hinks